FILED'08 AUG 20 16:31 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID GOUDIE and SEAN FARMEN,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

CABLE COMMUNICATIONS,
INCORPORATED, incorporated in the
State of Nevada,

        Defendant.

CV. No. 08-507-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs David Goudie ("Goudie") and Sean Farmen ("Farmen") (collectively "Plaintiffs")

1 - FINDINGS & RECOMMENDATION    1    {KPR}

move to certify a collective action against defendant Cable Communications, Inc. ("CCI") on behalf of themselves and other similarly situated employees pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA" or "Act"), for unpaid minimum and overtime wages.[1] 29 U.S.C. § 216(b) (2008). For the reasons set forth below, the court should grant Plaintiffs' motion and certify this collective action for purposes of notice and discovery.

*Factual Allegations*

Plaintiffs allege these facts in support of their motion. CCI employs approximately 300 people throughout Oregon, Virginia, Arizona, Washington, and Georgia. (Plaintiffs' Memorandum ("Pls.' Mem.") 2; Deposition of Chris Dennis ("Dennis Depo.") 14.)[2] At least 100 of these

---

[1] The court notes that Plaintiffs claims for unpaid wages at termination, pursuant to ORS 652.140, and for unpaid minimum and overtime wages, pursuant to ORS 635.055, are not eligible for certification under the FLSA because the collective action provision does not support violations of state law above and beyond the requirements set forth by the federal statute. *See Hargrove v. Sykes Enters.*, 1999 U.S. Dist. LEXIS 20141, at *7-8 (D. Or. June 30, 1999) ("Employees cannot piece together an FLSA claim by alleging that the employer's actions violated a state law, when that state law provides standards different from those contained in the FLSA. To hold otherwise would permit employees who were terminated in Oregon to file FLSA claims in federal court, while employees terminated in other states could not. If the company employed workers in several states, it would be subject to different FLSA claims depending on the states in which the employees worked, even though it treated all of its employees in the same manner. Doing so would thwart Congress's intention of creating a 'uniform national policy' and convert what is essentially a state issue into grounds for filing a federal lawsuit.")

[2] Dennis has worked for CCI since May 1998. He started as a technician in Virginia Beach and then Roanoke, Virginia, transferred to Tuscon, Arizona as a trainer/assistant manager, became an assistant manager in Phoenix, Arizona, then in 2001 moved back to Virginia, in Hampton, to take a night manager position. Later in 2001, he advanced to a general manager position in Roanoke, Virginia, and two years later transferred to Phoenix, Arizona as general manager there. In 2004, Dennis took an operations managers position, then left CCI later that year. Dennis worked twice more for CCI, once during 2005 as a technician, and again during 2006 as a manager. Dennis currently CCI's general manager in Portland. (Dennis Depo. 10:21-13:18.)

employees are technicians whose duties chiefly include picking up equipment for cable installation, driving to job sites, and installing equipment at job sites in the designated service area. (Complaint ¶ 35.) The technician job position is posted at CCI's various locations and describes identical duties, regardless of the geographic location of the job, and includes a link to the technician job description on CCI's website. (Exhibit ("Ex.") C.)

At the time of the alleged violations, CCI used spreadsheets to track technicians' hours for purposes of wage and other calculations. (Dennis Depo. 96-97.) Technicians' names appeared on the spreadsheet, and entered next to each name were that technician's start and finish time for each day worked. (Dennis Depo. 58:12-14.) The spreadsheets were sent to CCI's corporate office, located in Georgia. (Deposition of Linda Bagley ("Bagley Depo.") 22:5-13.)[3] Bagley confirmed that she performed no calculations herself, but merely entered the hours worked into the spreadsheet and forwarded it to CCI's corporate office. (Bagley Depo. 72:10-73:3.) CCI's corporate office then would calculate overtime for employees and, based on these calculations, issue employee paychecks. (Bagley Depo. 25:15-25; 28: 7-11.)

Bagley also confirmed that implementation of employee payment policies, including overtime calculations, was performed by CCI's corporate office. (Bagley Depo. 73:11-15.) Dennis confirmed that CCI used this method of calculation nationally. (Dennis Depo. 77:6-10.) Prior to September 2007, CCI did not provide its technicians with hour and pay rate information unless their piece rate wages were less than the minimum wage. (Dennis Depo. 96:5-15.) Through these methods, Plaintiffs assert, CCI "controll[ed] payroll calculations, background checks, decisions

---

[3] Bagley began working for CCI in 1999 as a dispatcher in Phoenix, Arizona. In 2005 she moved to Portland and continued working for CCI as a dispatcher. In 2006 she became an office manager. (Bagley Depo. 9:20-11:15.)

3 - FINDINGS & RECOMMENDATION {KPR}

regarding changes and adjustments to payroll, employee checks, policies and practices through Defendant's corporate headquarters in Georgia." (Pls.' Mem. at 6.)

CCI's payment policy is as follows: CCI pays technicians according to either a piece-rate pay scale or the minimum wage, depending on the amount of work completed in a given pay period. Under this payment scheme, technicians are paid a predetermined dollar amount for completion of specific tasks. If, under the piece rate pay scale, the technician does not earn an amount equivalent to the minimum wage, the technician is paid the minimum wage, regardless of the number of pieces completed. (Dennis Depo. 63:15-21.) Technicians typically are compensated at the minimum wage in the initial weeks of employment, during the training period. Before 2007, technicians paid at the piece rate were not compensated for overtime hours worked. (Dennis Depo. 62:6-16, 64:6-13.)

At the time of hire, technicians are given a list of tools that they will need to perform their job duties. CCI does not provide these tools, but instead expects technicians to purchase them for use on the job, at a cost of approximately one hundred dollars. (Dennis Depo. 84:20-25, 85:1-17.) In addition, technicians are required to drive company vehicles and must purchase gasoline for these vehicles, but they are not reimbursed for gasoline purchases. (Dennis Depo. 83:3-11.) If the technician is paid at the piece rate, the dollar amount of gasoline purchased is subtracted from the technician's pre-tax income and paid to the technician in a separate check, which results not in reimbursement, but merely a tax benefit to the technician. (Bagley Depo. 57:4-10.) If the technician is paid the minimum wage in a particular pay period, the amount is not deducted from the pre-tax income and the technician is deprived of the tax benefit. (Bagley Depo. 59:6-18.) When asked about her understanding, Bagley testified that she was "told by corporate" how this system worked. (Bagley Depo. 59:15-18.)

*Legal Standard*

Section § 216(b) of the FLSA authorizes an employee to maintain an action against an employer for violations of the Act on behalf of the employee and "other employees similarly situated." 29 U.S.C. § 216(b) (2008). "In determining whether or not to certify a collective action, the core inquiry is whether the putative class members are 'similarly situated.' This court considers the term 'similarly situated' in light of the purposes and goals of a collective action." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413, 2002 U.S. Dist. LEXIS 23285, at *4 (D. Or. Nov. 8, 2002) (internal citations omitted). This is a "less stringent" standard than a class action motion governed by Federal Rule of Civil Procedure ("Rule") 23. *Hargrove v. Sykes Enters.*, 1999 U.S. Dist. LEXIS 20141 at *9 (D. Or. June 30, 1999). *See also Ballaris v. Wacker Siltronic Corp.*, 2001 U.S. Dist. LEXIS 13354, at *4-5 (D. Or. Aug. 24, 2001) (§ 216(b)'s "similarly situated" standard is less stringent than the standard under Rule 23). Thus, plaintiff need demonstrate only a reasonable basis for a claim that the employer acted on a class-wide basis. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *see also McElmurry v. US Bank Nat'l Ass'n,* 2005 U.S. Dist. LEXIS 44451, at *14 (D. Or. Oct. 7, 2005) (citing *Grayson* for this proposition). This burden can be satisfied by a "'modest factual showing' that plaintiffs and potential plaintiffs 'were victims of a common policy or plan that violated the law.'" *Ballaris*, 2001 U.S. Dist. LEXIS 13354, at *6 (quoting *Thiebes v. Wal-Mart Stores, Inc.*, 1999 U.S. Dist. LEXIS 18649, *6-7 (D. Or. Dec. 1, 1999)). The claims and positions of the employees need not be identical. *Ballaris*, 2001 U.S. Dist. LEXIS 13354, at *5; *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *10.

A plaintiff who seeks collective action certification also must show that other employees who are similarly situated wish to opt into the action. This "opt-in" aspect of § 216(b) means that a

5 - FINDINGS & RECOMMENDATION                                                                                          {KPR}

potential plaintiff does not become a member of the class unless he or she gives written consent and the consent is filed with the court. *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *9; *see also Michaelson v. Arrow Transp. Co.*, 1997 U.S. Dist. LEXIS 23665, at *2 (D. Or. June 6, 1997). Thus, similarly situated employees become members of the class only by affirmatively choosing to join the class, and once joined they are bound by the ultimate judgment in the case. *Ballaris*, 2001 U.S. Dist. LEXIS 13354, at *2; *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *10.

Although the Ninth Circuit has not explicitly endorsed this approach, courts in this district use the two-tier analysis set forth in *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001), to evaluate FLSA collective actions certification motions.[4] Under this analysis:

> [t]he first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the

---

[4] "Although it does not appear that the Ninth Circuit has endorsed or even discussed this approach, in the absence of express direction from the Supreme Court and most circuit courts, many district courts, including the District of Oregon, use the two-tiered approach to analyze collective action notice/certification motions under section 216(b)." *McElmurry v. US Bank Nat'l Ass'n*, 2005 U.S. Dist. LEXIS 45199, at *21-22 (D. Or. Dec. 1, 2005).

> representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e., the original plaintiffs – proceed to trial on their individual claims.

*McElmurry v. US Bank Nat'l Ass'n*, 2005 U.S. Dist. LEXIS 45199, at *20-21 (D. Or. Dec. 1, 2005) (quoting *Hipp*, 252 F.3d at 1218). *See also Gonzalez v. Select Onion Co.*, LLC, 2007 WL 1989696, at *2 (D. Or. July 6, 2007) (citing *McElmurry* and *Hipp* in applying the two-tier approach).

The district court has discretion to determine whether a collective action is appropriate. *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *11. *See also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (authorizing certification by district courts under this provision as incorporated into the ADEA by 29 U.S.C. § 626(b)); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535, 2007 U.S. Dist. LEXIS 26881, at *9 (N.D. Cal. 2007) ("The court's determination of whether a collective action is appropriate is discretionary."). Ultimately, before certifying a collective action, the court must be satisfied that there are number of potential members who desire to opt into the collective action. *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *13 (citing *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991), and observing that the court, upon a sufficient basis, may infer "that other potential plaintiffs would wish to opt into the proposed class").

*Discussion*

### 1. First-tier analysis

CCI argues that the court should evaluate Plaintiffs' motion using second-tier analysis, not the more lenient first-tier analysis, because discovery has progressed beyond the stage that first-tier analysis is designed to address. CCI observes that Plaintiffs originally filed this lawsuit as a class action in state court in March of 2007, and that the parties litigated the case for almost one year

before Plaintiffs dismissed it and refiled it in federal court. CCI points out that Plaintiffs already have deposed some of its employees, have been provided all discovery documents they requested, and filed an initial complaint and several amended complaints. Thus, CCI argues, discovery is sufficiently advanced to justify use of second-tier analysis in evaluating Plaintiffs' certification motion.

Plaintiffs counter that the court should apply the first-tier standard because no discovery relevant to the class certification issue has occurred. (Pls.' Reply 3.) In fact, Plaintiffs claim that while the case was in state court only "minimal discovery took place." *Id*. In their reply brief, Plaintiffs charged that CCI has "not yet produced discovery that Plaintiffs have sought," including any documents relating to the potential collective members, some of the documents requested for Plaintiff Goudie, and any of the data underlying the summary attached to CCI's opposition memorandum and upon which CCI relies to refute Plaintiffs' allegation that CCI violated minimum wage requirements. *Id*. at 3-4. At hearing, Plaintiffs further explained that in the state court action, CCI initially filed Rule 21 motions (Oregon state court's counterpart to Rule 12), and that the parties were engaged in settlement discussions before CCI changed attorneys, and that discovery did not begin until January 2008 when Plaintiffs, Dennis, and Bagley were deposed. At this point, Plaintiffs learned of the basis for an action under the FLSA, which prompted Plaintiffs to dismiss the state court action and file in this court.

The court concludes that first-tier analysis is the appropriate standard by which to evaluate Plaintiffs' current motion because extensive discovery has not yet occurred. Even though the state court action preceded this case for almost one year before Plaintiffs filed in this court, very little discovery actually occurred in the state court action, a fact that CCI did not seriously dispute at

hearing. Further, Plaintiffs claim that CCI has not produced the following: all information regarding Plaintiff Goudie, any information at all regarding Plaintiff Farmen, and no information pertaining to the putative class despite Plaintiffs' request for that information. CCI submitted the payroll summary to support its opposition to Plaintiffs' motion and Plaintiffs now seek the data underlying that summary to test its accuracy and completeness regarding overtime and minimum wage allegations. Therefore, the court concludes that meaningful discovery has not occurred and that first-tier analysis applies to Plaintiffs' motion.

2.   Common plan or policy in violation of the FLSA

In order to qualify for conditional certification, Plaintiffs must demonstrate that defendants followed a "common policy or plan" in violation of the FLSA. *See Ballaris*, 2001 U.S. Dist. LEXIS 13354, at *6. This showing, at the first tier, "is based on the pleadings and affidavits submitted by the parties." *Adams*, 2007 U.S. Dist. LEXIS at *12 (citing *Leuthold v. Destination Am.*, 224 F.R.D 462, 467, 2004 U.S. Dist. LEXIS 20724, at *12 (N.D. Cal. 2004)). Therefore, it is inappropriate for the court to address the merits of Plaintiffs' claims at this stage. *See Ayers v. SGS Control Servs., Inc.*, 2004 U.S. Dist. LEXIS 25646, at *6 (S.D.N.Y. Dec. 16, 2004) ("Evaluation of the merits of plaintiffs' claims is unnecessary to determine whether notice is appropriate to the defined similarly situated class."). Plaintiffs are not yet required to produce evidence that their claims will succeed on the merits or that FLSA violations actually have occurred. Rather, the limited evidentiary showing required at this stage concerns the appropriateness of notice to potential parties to the collective action, and the evidentiary showing required reflects this purpose.

In their complaint, Plaintiffs allege that CCI violated minimum wage and overtime provisions of the FLSA. CCI argues that Plaintiffs' FLSA claims are without merit because (1) Plaintiffs have

not produced evidence that technicians ever *actually* earned less than the federal minimum wage; (2) a requirement that employees purchase tools for use on the job is not, in itself, unlawful; (3) analysis of Plaintiff Farmen's wage summary shows that he never earned less than the federal minimum wage; and (4) technicians employed by CCI are not entitled to overtime wages under the "motor carrier" exception to the FLSA, 29 USC § 213(b)(1). Therefore, CCI maintains, Plaintiffs have made no showing of a common policy or plan in violation of the FLSA.

However, as Plaintiffs correctly point out, CCI's arguments go to the merits, rather than the existence of a common policy or plan in violation of the FLSA. Plaintiffs have provided evidence that persons employed as technicians by CCI are subject to similar, if not identical, compensation policies and structures. In his deposition, Dennis testified that he had worked for Defendant in several states and that CCI used the same practices in each location. (Dennis Depo. 10-13.) In her deposition, Bagley testified that payroll information was sent to CCI's corporate headquarters in Georgia for final processing and issuing of paychecks. (Bagley Depo. 23:20-23, 26: 21-25, 28: 7-10, 73: 11-14. ) Plaintiffs also attached examples from CCI's website where jobs posted in different states link to the same web page, and thus have identical descriptions in each state. (Ex. C.)

Plaintiffs have alleged plausible legal theories based on this common wage policy and payment scheme: that technicians did not actually receive the minimum wage in a week where their out-of-pocket expenditures caused their actual wages to drop below the federal minimum wage and that technicians were not paid overtime wages for overtime hours worked. These theories are uniformly applicable at many, if not all, of CCI's locations. Therefore, Plaintiffs have established a common policy or plan in violation of the FLSA sufficient to satisfy the standard for a motion to certify a collective action.

3.   Similarly situated

A plaintiff seeking conditional certification must produce sufficient evidence to create a reasonable inference that they and their fellow class members are "similarly situated." *Sheffield*, 2002 U.S. Dist. LEXIS, at *4. Here, Plaintiffs' sixteen-page complaint against CCI contains substantial allegations of a common pay policy that allegedly violated the FLSA's minimum wage and overtime provisions. To support these allegations, Plaintiffs submitted deposition excerpts of two CCI management employees, one of whom has worked as a general manager for CCI in three of the five states in which CCI operates, to support the substantial allegations in their complaint that CCI's payroll policy denied both minimum wage and overtime pay to its technicians. There seems little doubt that a significant degree of commonality exists between Plaintiffs and their fellow technicians, as Plaintiffs' evidence shows that both the job title and job description are identical for all technicians regardless of their geographic location. The evidence also shows that CCI, through its corporate office, applied its pay policy to all technicians in each of the five states in which it operates. This evidence raises a reasonable inference at this early stage that CCI had a common policy in place which, if implemented as Plaintiffs claim, violated the FLSA's overtime and minimum wage requirements, at least with respect to some of the potential collective members.

Plaintiffs' evidentiary offering is at least as sufficient as that Judge King accepted in *Ballaris* to conditionally certify a FLSA collective action for notice and discovery purposes. In that case, the plaintiff alleged that the defendant had a policy and practice of denying its workers required overtime wages and of requiring its employees to conduct preparatory and concluding activities while off the clock. *Ballaris*, U.S. Dist. LEXIS 13354, at *1. Judge King concluded that the plaintiff's affidavit and the affidavit of another former employee attesting to "how the alleged policies and practices are

manifested and how they generally affect those employees working" for defendant, coupled with the allegations in the complaint, were enough to meet the lenient burden at tier one. *Id.* at *6-7. In fact, Judge King noted that the plaintiff's affidavit and the affidavit of the former employee were "alone sufficient to certify the collective action . . . ." *Id.* at *8.

Further, Plaintiffs have offered evidence in each of the three areas that Judge Marsh found lacking in *Michaelson*. There, Judge Marsh denied the plaintiff's motion to certify because she failed to produce any specific information on the challenged policy, to provide affidavits to raise an inference about the policy or practice, or to provide information about the job responsibilities of the potential members of the collective action. *Id.* at *2-3. Here, Plaintiffs have made specific and detailed allegations regarding the company-wide policy they challenge, have supported their allegations with testimony from CCI's own employees, and have shown that all potential members of the class shared an identical job description.

In determining whether a potential class is similarly situated, courts have rejected conditional certification where the class is too broad, or the duties of different class members are too varied. In *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1278 (M.D. Ala. 2004), the court was "skeptical about whether plaintiffs could meet their burden" because the class was overbroad, where the class included "all 'similarly situated' employees (current and former) of Defendant who were subject to the uniform policy of not paying overtime compensation." The court was also skeptical because Plaintiff gave "almost no information about the job titles or duties of the [defendant's] employees whom plaintiffs urge as potential class members." *Id.* This differs greatly from the present case, where the class includes all employees classified as technicians, the specific job duties of these technicians have been described, and CCI's online job descriptions have been

submitted into evidence.

In *Hargrove*, 1999 U.S. Dist. LEXIS 20141, at *12-13, Judge Haggerty did not find the plaintiffs similarly situated because "plaintiffs were all allegedly paid late, but at different points in time and with no common pattern regarding how the payments were ultimately made." For this reason, "[c]lass resolution would be no more efficacious than independent resolution of the individual claims of potential plaintiffs." *Id.* at 13. In another opinion by Judge Haggerty, the court remarked that "[t]he class members held different job titles, enjoyed different payment structures (piece-rate, hourly, and salaried), and worked at nine different job sites. Thus, the dissimilarities among the putative class members extend to geography, work sites, and payment systems." *Sheffield*, 2002 U.S. Dist. LEXIS 23285, at *5-6. By contrast, the potential plaintiffs in this case have jobs with very similar, if not identical, duties and are paid pursuant to the same pay structure, regardless of geographical location. Therefore, the Plaintiffs satisfy the "similarly situated" standard required for certification of a collective action.

4.   Others who wish to opt-in

CCI argues that Plaintiffs have not met their burden of demonstrating that other similarly situated employees wish to join their lawsuit, and it points to the absence of affidavits or other evidence from potential collective members indicating their desire to join this action. "Before giving notice to potential class members in an FLSA action a court should be satisfied that there are potential members who desire to 'opt in' and who are similarly situated to plaintiff." *Michaelson*, 1997 U.S. Dist. LEXIS 23665, at *2 (citing *Dybach*, 942 F.2d at 1567-68). Beyond this general parameter, there seems no uniform standard that governs exercise of the court's discretion to determine whether or not to certify a collective action at the initial stage. District courts have, thus,

exercised their discretion to determine whether class certification is appropriate in a given instance. For example, in *Ballaris* Judge King found that the plaintiff's affidavit and another former employee's affidavit "alone" were sufficient to support certification. By contrast, in *Hargrove* Judge Haggerty found insufficient seven former employees' expression of interest in joining a possible collective action.

Further, at the initial stage, the courts typically do not focus on whether the plaintiff has produced enough evidence of co-worker interest. For example, in a 2001 decision from this district, Judge King set forth "the standard that applies in determining if a collective action is appropriate: 'For prospective plaintiffs to be similarly situated, there must be a factual nexus which binds them together as victims of an alleged policy or practice.'" *Ballaris v. Wacken Silttronic Corp.*, 2001 U.S. Dist. LEXIS 13354, *5 (D. Or. Aug. 24, 2001) (quoting *Wyatt v. Pride Offshore,* 1996 U.S. Dist. LEXIS 13335, at *2 (E.D. La. Sept. 6, 1996)). *See also Gonzales*, 2007 WL 1989698, at *2 (D. Or. July 6, 2007) (noting that the question on certification is whether there is sufficient evidence that similarly situated employees "were together the victims of a single decision, policy, or plan."). Moreover, "[i]t is well established that the 'similarly situated' standard does not require that all of the class-members' claims must be identical. Further, 'the potentially individualized nature of determining damages is irrelevant in considering conditional certification because the threshold inquiry does not require that the extent of the potential plaintiffs' damages be identical or even similar." *Wren v. RGIS Inventory Specialists*, 2007 U.S. Dist. LEXIS 95439, at *17-18 (N.D. Cal. Dec. 19, 2007) (quoting *Adams*, 242 F.R.D. 530 at 537) (internal quotations and citations omitted).

The court concludes that the totality of Plaintiffs' evidentiary offering is adequate here to meet their initial burden of showing that similarly situated employees wish to join this action. CCI's

corporate office calculated the wages and overtime pay for all technicians in five states, its employees' descriptions of the policies and practices that Plaintiffs' challenge create a reasonable inference at this stage that FLSA violations occurred, CCI's corporate office implemented those policies and practices, and those policies and practices potentially affected the pay of some or all of CCI's approximately 300 technicians. Given the number of employees in the job classification at issue and the uniform consistency with which CCI appears to have applied its pay and overtime policy, the court is satisfied that a sufficient basis exists to conclude that some percentage of these employees will wish to join Plaintiffs' action.

Accordingly, the court applies first-tier analysis to Plaintiffs' motion for collective action certification and finds that sufficient evidence exists to warrant granting Plaintiffs' motion for purposes of notification and discovery. The court notes that certification at this stage is conditional; it is only for purposes of notice to the putative class and discovery. Once discovery is completed, or substantially so, CCI may move to decertify the class in whole or in part. Should the class be decertified, Plaintiffs' suit would continue forward on their individual claims, but not as a collective action.

### 5. Statute of Limitations

Civil actions brought pursuant to the FLSA "must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988) (citing 29 U.S.C. § 255(a)). A violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *Id.* at 133. In *Wren*, the defendant argued that there was no evidence of willfulness and that the statute of

limitations should be only two years. The court stated that because the defendant was "a nationwide company and [had] been engaged in litigation over alleged FLSA violations," the argument had no merit. The court declined to limit the class period to two years, because doing so would "amount to a holding that Plaintiffs, *as a matter of law*, [would] be unable to establish willfulness on the part of [defendant]." *Wren*, 2007 U.S. Dist. LEXIS 95439, at *30 (emphasis in original).

Here, the court similarly declines to decide, as a matter of law, that Plaintiffs cannot establish willfulness on the part of CCI. In fact, Plaintiffs have presented a colorable claim that CCI acted "willfully," for purposes of an FLSA violation. At the very least, CCI is a sophisticated commercial entity with locations in five states with approximately 300 employees. On this fact alone, the court is unwilling to foreclose on the possibility that CCI's actions constitute willfulness under the Act. Therefore, to the extent that certification is granted, Plaintiffs will be allowed to conduct discovery pursuant to a three-year, rather than two-year, statute of limitations.[5]

5. <u>Notice and Class Description</u>

---

[5] Under 29 U.S.C. § 256, a collective action is "commenced in the case of any individual claimant--(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced." *See also* 29 CFR 790.21(B)(2)(ii) ("The courts have held that a cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages "accrues" when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends. The Portal Act provides than an action to enforce such a cause of action shall be considered to be "commenced": . . . (2) In collective actions, as to an individual claimant. . . . (ii) On the subsequent date when his written consent to become a party plaintiff is filed in the court, if it was not so filed when the complaint was filed or if he was not then named therein as a party plaintiff.") Therefore, notice is authorized for technicians employed by CCI in the three years preceding the date of filing of this Findings & Recommendation. The court designates this time period, specifically, as August 20, 2005 through August 20, 2008.

Plaintiffs request, upon conditional certification of this collective action, that the court "order Defendant to produce the last known names, addresses, phone numbers, email addresses, social security numbers for all technicians who worked for Defendant in the United States within three year of the filing of this action." (Pls.' Mem. 13.) CCI argues that "Plaintiffs and their counsel do not require phone numbers, email addresses or social security number in order to mail any potential notice." (Def.'s Opposition ("Opp.") 28.) The court concludes that the names, addresses, phone numbers, and e-mail addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action.

Regarding the description of the putative class, for notice and discovery purposes the description should be "All technicians employed by CCI from August 20, 2005 to August 20, 2008."[6] This definition allows, at least initially, consideration of Plaintiffs' allegation of willful violations of FLSA's provisions.

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Proceed as a Collective Action and to Facilitate Notice Pursuant to 29 U.S.C. 216(b) should be granted. The action should be ordered to proceed under conditional certification as follows: (1) notice to all persons employed by Defendant as technicians within three years of the date of mailing the notice is authorized, (2) Defendant shall produce names, addresses, and telephone numbers of all potential members to the collective action to Plaintiffs, (3) Plaintiffs' counsel is authorized to mail notice and opt-in forms to all potential

---

[6] The court recognizes that the parties are still in the process of submitting proposed notices and related briefing. The court will take the form of notice up and authorize a final notice at its earliest convenience. This does not affect the period of notice, described above, with respect to the statute of limitations.

members via a third-party administrator, and (4) putative members to the collective action can opt-in by returning consent forms to the third-party administrator within ninety days of the mailing of the notice.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than September 2, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 20th day of August, 2008.

                                        /s/
                            JOHN V. ACOSTA
                          United States Magistrate Judge